The first case is United States v. Hicks, and we'll hear from Mr. Southerland. Good morning. My name is Stuart Southerland from the Public Defender's Office for the Eastern District of Oklahoma, representing Mr. Elijah Hicks. May it please the Court. My focus today is going to be on the instructional error alleged in Propositions 1 and 2, but I would briefly, just up front, like to talk about Proposition 5 just for a minute or two. The double jeopardy issue with regard to 18 U.S.C. 924C&J, as argued in the fifth proposition, I understand that the government has confessed the error, but I also understand that this Court does not have to accept that concession or the remedy. I would point out that throughout the Court proceedings, the prosecutor at the District Court agreed that should the jury return a verdict of guilty on both Counts 2 and 3, the proper remedy would be to vacate the conviction in Count 2 at the time of sentencing. The Court agreed. The Court ordered that should the jury, in this case, return a verdict of guilty on both Counts 2 and 3, the Court will vacate the conviction in Count 2 at the time of sentencing. And then finally, on appeal, the appellate counsel agreed that this Court should remand with instructions to vacate the conviction in Count 2. Unless this Court has any questions specifically about that issue, I can continue to the Proposition 1 and 2. With regard to Proposition 1 and 2 relating to the self-defense claim, I think it's important to look at all of the self-defense related instructions together. There are three pertinent instructions and not all of them are given. The first is the self-defense pattern instruction that was given as Instruction Number 19. The second is the proposed jury instruction, Number 6, which was intended to advise the jury as to how they were to use evidence of prior bad acts as committed by the deceased Timothy Buckley, what I've called, I think, Reverse 404B. Are we here on plain error on that Number 2? I think the answer is yes, because you did not object, even though you submitted it when it was filed. You didn't object to the giving of that. I understand that, Judge. I would like to make a pitch for why it's not plain error. I know the government wants to review for plain error. I know that there wasn't an objection. But this is not a situation where we're asking the court, sua sponte, to give an instruction that wasn't presented that the court didn't know about. The instruction was submitted in a timely fashion. I think it was February 7th, about a week before trial. The government immediately filed an objection, not wanting this evidence in a motion to eliminate. And defense counsel responded to that. So the court had dozens of pages, I think, of briefs and jury instructions to rely on on this issue. And the court understood the issue. The court said, look, I've got to defer this until I see whether or not Mr. Hicks testifies. If Mr. Hicks testifies that he's aware of these prior violent acts, presumably he was going to instruct the jury on that and allow the evidence in. I would point out that this is one moment where I think is significant. Prior to Mr. Hicks testifying. Counsel, my question is very simple. Are we here on plain error or are we not on that issue? I'm arguing that it's not plain error. But obviously, if this court disagrees with me, I have a plain error argument as well. I would suggest if you want to argue plain error, well, it's your time. Fair enough. This is what I would just point out to the court and then I'll move on. If we look at the point in time before Mr. Hicks came forward to testify, there was a discussion and defense counsel advised the court, and I'm quoting from him, I think if there's some concern for that judge, I know we have submitted a proposed instruction for how to address that. That essentially, and I'm paraphrasing now, that the attorney told the judge, told the judge exactly what the jury instruction was going to help, and that is that these convictions are relevant for how they influence Mr. Hicks and his state of mind. And the court responded, which is critical to your self-defense theory. So just to take the position that the court wasn't aware of the jury instruction, wasn't aware of the underlying issues. And finally, I would like to point out that probably the reason why no additional objection was offered during the final jury instruction settlement was because the judge, if defense counsel failed to follow Rule 30, the judge actually, I think, failed to follow the strict terms of Rule 30B as well, which states that the court must inform the parties before closing arguments how it intends to rule on the requested instructions. The judge— Well, can I ask you about that? Because the judge did what the only thing that I have ever seen judges do in any federal trial, is both parties submit proposed instructions, typically, as in this case, there's a deadline to submit objections, and then the judge will have, during the course of the trial, typically, a packet of tentative instructions that, in this case, distributed. And so each side then sees, oh, well, I could easily compare the instructions that I proposed with the tentative instructions that the judge is going to consider, and whoops, he didn't include mine. And so you knew, and so the judge, yes, didn't go through and apply Rule 30B in the way that you say he should have. I've really never seen a judge do that. I've never seen a judge go through and say, even though I'm going to give you a packet of proposed tentative instructions, I'm going to go through and go through this academic exercise of ruling on objections. I mean, it's sort of wearing belts and suspenders. You knew he wasn't going to include that instruction when you got that packet. I do understand, and this is a situation where, frankly, and this might have been my lack of experience in the Western District of Oklahoma practicing in the Eastern District, they did something that surprised me a little bit in that there was a jury instruction conference off the record, which in the future, I think I would prefer that it be on the record. The judge wasn't present during that. I think it took place with the clerk. We discussed these instructions, and it was determined that this instruction would not be included. So it certainly was. But you did have an opportunity on the record to make objections to the instructions. He did. And in fact, we went down and objected to many of the instructions. But just not this way. Exactly. OK. Now, I would finish by asking this court to look at the fairly recently decided case of United States v. Britt, 79 F. 4th, 1280. I think it was decided about last August. And I thought that was an interesting decision. Even though it was decided on different facts than the case that we have before, I think the case does suggest that the district court does bear some responsibility for properly instructing the jury when the issue has been made clear to the judge, when the judge knows what the defense is going to be. And he did. He knew exactly what the defense was going to be, because it was fully briefed. And an instruction was submitted in writing. So he had that information available to him as well. And yet, he didn't properly instruct the jury. So counsel, before all of our time passes in regard to this, I'd like to hear your argument in regards to your argument that the trial court abused its discretion in failing to give your proposed self-defense instruction. Your Honor, it's the law. While it's not in the pattern instruction, if we look at United States v. Toledo, 739 F. 3rd, 562, the case specifically states that the law does not impose a duty to retreat to determine if retreat is a reasonably available option or to determine whether other alternatives are reasonably available before using force, which is intended to cause death or bodily harm. All right. That's in keeping, basically, with your original argument. But as I was looking at the briefs and looking back at the record, the trial court says I'm not going to give that instruction, because it's not the government's position that your client had to retreat. And therefore, that instruction would be superfluous. You're adding an issue that may not be there. Well, am I correct? Isn't that what the trial court said? I'm not going to give it, because the government's argument is not that he had to retreat. I do think that the government essentially promised not to use the word duty, that they weren't going to misadvise the jury that there was a duty to retreat. And that's true. They didn't. We're not arguing prosecutorial misconduct here, that the prosecutor did anything wrong. The prosecutor didn't want a self-defense instruction at all. He actually objected to the instruction. But that doesn't change the fact that both on cross-examination of Mr. Hicks and in closing argument, that the failure to retreat was emphasized at some length. And while the jury can use that in determining the reasonableness of his actions, I believe that without that additional language, I think that the additional language would have made it clearer, and I think the jury easily could have interpreted the failure to retreat alone as denying him the right to assert a self-defense. Is the issue whether or not the failure to give a no-duty-to-retreat instruction deprived you of the defense? Well, that's why I started— What is the overarching legal theory in which we can predicate error? That's why I think I support to review all three instructions together, because I think they all work together. I mean, the judge made a decision up front that the self-defense instruction alone wasn't going to adequately explain to the jury what the law was in this case. He decided, and he did give an instruction relating to the prior reputation of Mr. Buckley and how that could be used to determine whether or not he was the aggressor or not in the confrontation, which I believe exacerbated the error, made things worse. It acted as a limiting instruction. You can only use it for— And I understand you made that argument in your briefs, too. When we write the opinion to say we are going to reverse based on the failure to give this no-duty-to-retreat instruction, our topic sentence is going to be, this violated the defendant's right pursuant to X. What is X? The failure to allow you to present a defense? Is it a— That is true. I mean, it's a question, not— Fair enough. And as I was writing the brief, I don't know if I cited the case or not, because it doesn't really matter as far as the case itself. It was an Oklahoma decision that I was involved in some 14 years ago. It was Owens v. State, and if you want to look at it, it's 229 Pacific 3rd, 1261. And what the court said in that case, to me, even though the issues were different in that what the court had to say is pertinent to this case, which is that the jury really wasn't given the tools that it needed with which to adequately analyze the self-defense claim. As a result, we were denied the right to present a defense, a complete defense. If we review all of the instructions as you're talking, the three together, there's a marked difference between a question to retreat and a leaving the scene, because that's the third instruction that you're objecting to. So I'm kind of where the judge is. So what's X? Because the leaving the scene instruction is a proper instruction in and of itself. And if I review all of these in tandem and together, I think you're in worse trouble than what I do if I had to look at them individually. Well, Judge, I'd like to keep maybe at least a minute to respond, but you're right. And that's why the judge decided that just a self-defense instruction wasn't going to be enough. He made the decision that I've got to get some instructions relating to Timothy Buckley's prior violent nature, prior violent behavior. I don't think he went further and far enough by giving a specific instruction as to the acts, but he did make the decision that the self-defense instruction alone was insufficient. Thank you. We will stop this clock, but Judge Kelly, I know it's sometimes hard to interject questions when you're on Zoom. Do you have any questions? No, I have no questions. Okay. Thank you. Thank you. We'll hear from the appellate. Good morning, Your Honors. Lisa Williams here representing the United States of America. May it please the Court. I think I'd like to pick up where we left off with Mr. Sutherland and argue that the jury needed to properly assess the defendant's self-defense claim. This is really not a complicated trial, and it's not a complicated theory of defense for the jury to grasp. It's a street fight. Counsel? Counsel Kelly? Yes. You hammered away on the fact that he did not treat. That argument was made at least several times with the clear suggestion that the law required him to retreat. Now, shouldn't he have been given an instruction that satisfied, you could still argue, but he did not have a legal duty to retreat. With all due respect, Your Honor, I don't believe that the government suggested that he ever had to retreat. They did discuss in closing that he could have retreated, and that's entirely consistent with the Toledo opinion. You know, there is no duty to retreat under the law. He doesn't have to. But his available— And nobody told the judge did not tell the jury that. The judge did not tell the jury that through the instructions, but defense counsel argued it in closing, and so the jury was aware of it. And that's really the problem with the instructions suggested by the defendant and why it's legally flawed, is it's only one part of the picture. The instruction proposed by the defendant was just that there's no duty to retreat. What's missing from that instruction is, however, the jury is free to consider the ability to retreat in determining whether or not the use of force was reasonable. And it strikes me it's very similar as to the flight instruction. The jury can consider flight, but it should also know that there are a lot of other reasons why someone might flee that have nothing to do with guilt. If a duty of retreat instruction was going to be given, they should be instructed that there is no duty to retreat, but they can consider the ability to retreat in determining whether or not it's reasonable. But the defense-proposed instruction left that out, that second part out entirely, and so standing by itself, what the defendant was proposing is not a correct instruction and would not be helpful to the jury. Well, doesn't that walk hand in glove with Mr. Sutherland's argument based on our recent opinion in Brit, where there was an argument that the defense counsel's instruction was not complete, there was a full discussion, if the judge had said, okay, well, I agree that there is no duty to retreat, this is a vital part of the argument that the defendant is making, and your counterpart in the U.S. Attorney's Office said, okay, well, then I that vital sentence in Toledo to be included, then the court would have been fully alerted and would have been able to give a complete explication of Toledo. Here's the distinction, though, is that in Brit, the trial court acknowledged that defendant's proposed instruction was confusing but needed and then didn't take the steps itself to fix. In this case, the trial court didn't say it's needed, right? That's the distinguishing factor between here and Brit. What the trial court then instead said is it's not needed because no one is ever going to argue that you had a duty to retreat. And so I think that Brit, while it certainly does impose a duty on the trial judge to make sure the instructions are appropriate, that's not a duty that exists in this case because the trial court never reached the point of saying we need this instruction. And really, the issue, the overall constitutional issue is whether or not the defendant was able to present his theory of defense to the jury and not including a duty of retreat instruction did not at all prohibit him from arguing his theory of defense to the jury. Again, this is not a complicated case. It's a street fight where somebody brought a gun and killed somebody else. And the issue is, did I think my life was being threatened or the life of someone else? You know, there's that testimony about Jessica and the victim hitting her as well. Did I think someone was in so much danger that I had to use reasonable force? And we don't need an instruction on prior bad acts. We don't need an instruction on duty to retreat. Those are really superfluous instructions in a very straightforward case. Isn't that the very reason that it really was arguably very unfair for the court? Because it was very straightforward. He's standing there. He's the only one that's at arm. The decedent is standing a few feet away, starts out joking, and then it quickly devolves. There are eyewitnesses. And the whole issue is what your counterpart, as Judge Kelly elucidated in closing argument, was that he had all of these options to walk away. When he sees the decedent getting mad and he's worried that he's drank too much beer to retreat, and the judge decides, OK, well, I don't really need to give an instruction on this. This is the whole ball of wax. Because without that duty to retreat, it is a very simple, straightforward, slammed-up conviction. And then when you get to flight, oh, I really do need to instruct on flight. Isn't that really a little bit unfair? And doesn't the straightforward nature of the shooting and the lack of dispute about really what transpired sort of illuminate why a no-duty-to-retreat instruction was so important in this case? The government would disagree that it's unfair, Your Honor. I think that other trial judges may have reached a different conclusion, but that doesn't mean that this judge abused its discretion in making that distinction between giving the instruction on flight on one hand and withholding the instruction for prior bad acts and duty to retreat on the other. I don't think that the – I'm trying to find the right word. But the distinction between the two isn't sufficient enough to create that abuse of discretion, which is what this court would have to find in order to remand. It's an interesting choice, and it's one that maybe other judges wouldn't have done, because I do recognize the tension between those two different concepts. But I would say in this case, the consciousness of guilt, flight instruction, is actually more relevant than in other cases, because you have a defendant asserting self-defense. And if he did think that his life was threatened or the life of another during that fight, and if he did think that he needed to use deadly force, his flight afterwards isn't really explained, because if you think you had to do that, I think a jury would or reasonable minds would say, then you would stay and tell the police, I had to shoot him because I thought he was going to kill me. But in this case, he goes on the run for four months evading law enforcement. And that really does speak to his consciousness of guilt, which is highly probative in a trial that's all about his mindset. Because of whether or not the jury had to determine whether or not it was a reasonable belief, his consciousness that he did something wrong is more probative than in other types of situations where the court may give a flight instruction. And so I think because of that and these specific facts, that flight instruction was more warranted here than it may have been in other occasions. I would also argue that the defendant is asking, an instruction on flight is unnecessary in any trial. And the defendant's argument is that this court should wholesale reject an instruction on flight in any trial, in any case. And that's just something that is not supported by precedent or by the law in this circuit. This is an instruction that has been used in hundreds of trials, and it's just hard to reach the conclusion that it was an abuse of discretion for the court to give an instruction that has been given so often in so many other forums. Is not that instruction a part of the test circuit pattern of jury instructions? It is, Your Honor. And so I think putting aside then the flight instruction and returning to the retreat and the prior bad acts, what this court, really what those instructions taken together, all they would do is provide clarification or a clearer understanding to the jury about what the theory of defense is. And if that's the case, if all a defendant's instructions would do is to provide clarity or clearer understanding, it's not an abuse of discretion for the court to fail to give those instructions. It's only abuse of discretion if the defendant then is prevented or prohibited from arguing his theory of defense. But if you look at instruction 19, the instruction that was given, the jury is told that they have to assess whether or not his fear of immediate harm was reasonable. And so the defendant was free to argue, I know he's a dangerous guy. He did all these things in the past. I know he's violent. I know he's aggressive. I know he carries weapons. And because of that, I thought he was going to kill me that night. He did not need these instructions to make that argument. And in fact, they did. The instructions would just be, like I said, extra clarity, which cannot result in the conviction. Isn't that the purpose? Isn't that the purpose of instructions? To make clarity, to make clear what the various duties are? Well, I think it's to instruct the jury properly on the law. And if there is... But you were saying that all it would do would make it more clear. So it's OK if it's ambiguous? Is that your position? No, no, no, Your Honor. If the jury is properly instructed and there's no error with the instructions, and the instructions on their own provide a full and complete summary of the law, instructions that merely add to that and clarify... The failure to give instructions that merely add to those proper instructions do not constitute an abuse of discretion. That's the government's argument. And again, it's not that the trial court could have given these instructions and maybe not have been in error. The government isn't saying necessarily that the trial court was prohibited from giving these instructions. But the issue on appeal is whether or not it abused its discretion in deciding that these were not necessary in this trial. And then very quickly, I don't want to spend too much time on it because I read the room a bit, but the government's position is definitely that plain error applies to the issue of the prior bad acts instruction. The plain fact of the matter is that there was no objection given during the instruction conference to the failure to give the instruction. And as the court noted, you know, the defendant argued that he wasn't entirely at fault because the court never gave them a heads-up notice that it wasn't going to include their proposed instruction six. But absolutely, the court did. They did that when they gave the proposed instruction packet to the counsels. And that's how every trial that I've ever been involved in, that I've ever heard about, that's how the court communicates its decision on what instructions it's going to choose. And then you show up to the conference on the record and you have to put your positions on. And the fact of the matter is that simply did not happen in this case. And because of that, that has to be reviewed for plain error. Before all your time is gone, the opposing counsel addressed the issue of multiplicitous in the event, no matter what happens up here, that the trial court, it needs to go back in regards to resentencing from the government's position. Is that a correct position of the law? You know, Your Honor, I think that there could have been some sort of waiver or plain error analysis. No, I'm not talking about plain error and all. I'm talking about the last issue of the multiplicitous. No, because they didn't bring it up at sentencing, we could have maybe advanced some sort of. But the fact of the matter is, count two is a lesser included offense of count three. And this defendant should never have been sentenced on count two. That should have been dismissed. And everybody agreed to it. That's how this whole trial was set up. And unfortunately, it wasn't trial counsel, so I don't know what went awry at sentencing. But something went awry. And then we ended up with this sentence, and it shouldn't be. So your point is that when the court gets through researching that issue, we're going to agree with both counsel. It's a rare occurrence, Your Honor. But I think we're all going to agree. I see I have eight seconds left. And so if there are no further questions from the bench, I will return to my seat. Judge Kelly, do you have any questions? I have no further questions. Okay. Okay, thank you. And by the way, the court appreciates the candor, as we always expect from the government on the multiplicity issue. Felt, we'll hear from you for a vote. Thank you. With regard to plain error analysis on the proposed jury instruction six, you know, of course, this court is fully aware. And I don't think I need to get too deeply into the fact that there was error in that the court has a duty to instruct on a defendant's theory of defense. And the court had already determined that the self-defense instruction alone was not going to fully instruct on the theory of defense. So I do believe we have plain error there. The question whether it affected Mr. Hicks' substantial rights, that's where I kind of get into where I think this court should consider all the instructions together, because I think the error is additive. I think the error is cumulative. But at the very least, I think we've got something here that concerns precisely a principal element of the defense that was harped on by countless witnesses during trial. And I believe there was plain error. Okay, thank you. This matter is submitted.